UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ARTHUR D'AMARIO, III | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00779-DBH-MJK |
| | ) | |
| MANHATTAN HOUSING | ) | |
| SPECIALISTS, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION

Arthur D'Amario[1] has filed a civil action seeking equitable and injunctive relief against

Manhattan Housing Specialists, Inc., and the City of Attleboro.[2]  D'Amario's Proposed

Amended Verified Complaint (ECF No. 27) explains that he wants this Court to order Chief of

Police Kyle Heagney to release certain documents to him and conduct DNA and fingerprint tests

on documents arising from a 1997 criminal prosecution involving D'Amario's then girlfriend

and a criminal stalking complaint.  More recent events involve Manhattan Housing Specialists

who in 2010 accepted a section 8 housing application from D'Amario, placed him on a waiting

list, and then in 2012 denied him housing because of his criminal history and removed him from

---

[1]      When he filed the complaint D'Amario listed his address as Red Roof Inn, Mt. Laurel, New Jersey.  (ECF No. 1-1.)  His IFP application included numerous kinds of community-based income and expenses, such as SSDI payments and a monthly bus pass.  (ECF No. 2.)  This case was not screened pursuant to 28 U.S.C. § 1915A because it did not appear to be prisoner litigation.  D'Amario's current address is listed on the docket as FCI Fairton, Fairton, New Jersey.  Since he apparently was incarcerated after the commencement of the litigation, D'Amario's IFP status should be reevaluated if D'Amario files a notice of appeal and seeks leave to appeal without prepayment of the fees.  Based on allegations D'Amario makes in the body of the complaint, he possibly has "three strikes" involving prior PLRA litigation.

[2]      The actual named defendant is Kyle P. Heagney, Chief of Police, in his official capacity.  In a subsequent pleading D'Amario explains that "[t]he City of Attleboro is the actual defendant."  (Mot. Default Judgment, Memorandum at 1, ECF No. 18-1.)

the waiting list.  D'Amario wants to be restored to the waiting list retroactive to May 2010 in

order to obtain housing at the Esmond Village housing complex in Smithfield, Rhode Island.

He has filed a motion to amend his complaint (ECF No. 27) which I now deny as futile.

Manhattan Housing Specialist, Inc. has filed a motion to dismiss (ECF No. 22 & 23 (corrected

version)) which I now recommend the Court grant.  Although the City of Attleboro has never

been served I recommend that the Court dismiss the complaint as to Heagney/City of Attleboro

because it is frivolous and fails to state a claim.  My recommendations regarding dismissal are

based upon the allegations of the proposed amended complaint, so even if I had allowed the

amendment, the result would be the same.

### Proposed Amended Complaint Allegations[3]

D'Amario is a citizen of Rhode Island presently living in exile in New Jersey due solely

to the criminality of Police Chief Heagney.  (Proposed Amended Complaint, ¶ 2.)  Heagney is

chief of police for the City of Attleboro with supervisory authority over officers Arthur Brillon,

George Bussiere, Kenneth D. Collins, and their successors.  (Id., ¶ 3.)  The City of Attleboro,

Massachusetts, promulgated an official policy of harassing D'Amario with false arrests and false

imprisonments to drive him out of Rhode Island and leave him homeless, beginning in 1998.

(Id., ¶ 4.)  Manhattan Housing Specialists is a private real estate company incorporated within

Rhode Island and doing business there.  Manhattan operates a section 8 housing unit known as

Esmond Village that is located in D'Amario's hometown of Smithfield.  (Id., ¶ 5.)

---

[3]    I have included all of the factual allegations in the proposed amended complaint.  I have not included
D'Amario's legal conclusions regarding jurisdiction or other matters, such as his state law right to rent an apartment.
He alleges he has such a right, but does not cite any statutory authority or otherwise explain the nature of his cause
of action, other than to say it arises under state law.

*DNA Claim*

In October 1997, Heagney conspired with D'Amario's ex-girlfriend, Debra Ann Sellers

of Attleboro, to frame D'Amario with false criminal charges as a means of driving him out of

Rhode Island.  The City of Attleboro and Sellers enlisted the assistance of a Rhode Island State

Police detective and executives at Motorola in Mansfield, Massachusetts (Sellers's employer), to

falsify records, commit perjury in warrant applications, tamper with state court files, and

manufacture counterfeit evidence.  Motorola executives ensured that D'Amario would take the

fall for the fake charges by threatening some of D'Amario's lawyers.  (Id., ¶ 7.)  From November

3, 1998, to February 8, 1999, Heagney framed D'Amario by lying that he'd made nightly,

continuous, harassing phone calls to Sellers, when he had made not even one; by lying that he

had come into Attleboro to visit her when he was never there; that he was a "fugitive," when he

had never entered Massachusetts nor committed any crime there; by lying that he had written

Sellers when the mailings were Rule 5 service of copies of court pleadings ordered by the court;

by falsely accusing him of forging the signature of a Rhode Island state senator on a July 25,

1998, Statehouse letter; and by impersonating him.  (Id., ¶ 8.)  To impersonate D'Amario,

officers Brillon, Collins, and Bussiere were sent to Rhode lsland by then Chief Roland Sabourin

for the purpose of mailing anonymous, crank, stalker letters to Sellers with Rhode lsland

postmarks.  On or about September 1998, October 1998 and on January 14, 1999, Attleboro

policemen wrote at least three stalker letters to Sellers from Rhode lsland, then used them to

frame D'Amario as a violator of probation, which led to more than 13 years false imprisonment.

(Id., ¶ 9.)

In doing the above acts, the City of Attleboro's agents deposited their fingerprints on

each letter and/or envelope, and left their DNA in saliva beneath the stamps they moistened to

adhere and in the glue on the backs of the envelopes.  D'Amario has never been allowed any objective, impartial and competent analyses of the evidence to be conducted by a qualified scientist, which would fully exonerate him and result in every warrant since 1997 being invalidated and every judgment being vacated.  D'Amario's DNA went into the national database on May 20, 2009, and he has the DNA samples of Debra Sellers and Lt. Bussiere on letters they mailed him with licked stamps.  (Id., ¶ 10.)  D'Amario's ex-lawyers are engaged in a cover-up of the DNA/fingerprint evidence and continue to conceal copies of the anonymous letters and police records, because they are scared of the City of Attleboro, or they are conflicted and have been bribed.  In fact, the City of Attleboro has arranged for Motorola to promise one of the ex-lawyers that it would exert influence to get him a judgeship if he cooperated with this conspiracy.  Moreover, D'Amario discovered in July 2012 that in 1998-99, one of the ex-lawyers was serving as an agent for Rhode lsland State Police and was a paid FBI informant.  (Id., ¶ 11.) From 1997-2012, the City of Attleboro has refused to honor D'Amario's right of access to the evidence as codified in the Massachusetts Public Records Act, and he has exhausted other remedies.

D'Amario has been barred from bringing this claim prior to 2012 because the PLRA precluded suit, because his money had been embezzled from the Bank of Rhode Island during incarceration, because his conflicted ex-lawyers took bribes to forfeit his legal rights, and because the Court did not recognize a viable cause of action under 42 U.S.C. § 1983 for DNA testing until Skinner v. Switzer, 131 S. Ct. 1289 (2011).  In addition, D'Amario has been blacklisted by the entire Rhode Island Bar Association.  No Rhode Island lawyer will even

speak to him and no public service organization like the Innocence Project, ACLU, and Rhode

lsland Legal Services will take him as a client because of fear of the City of Attleboro and

Motorola.  (Id., ¶ 12.)

On February 4, 1999, in <u>Sellers v. D'Amario</u>, No. 9734 RO 0720, Debra Sellers admitted

under oath that she was lying in court and filing false charges against D'Amario.  Lt. George

Bussiere attended the hearing and reported Sellers's recantation to the New Bedford Assistant

District Attorney.  The assistant and Bussiere then arranged for court personnel to sell D'Amario

a fraudulently altered cassette copy of the hearing, with all of Sellers's exculpatory testimony

deleted, to facilitate the cover-up.  (Id., ¶ 13.)  On February 8, 1999, the City of Attleboro

dispatched two officers to unlawfully raid and ransack D'Amario's Smithfield, Rhode lsland,

home, to steal and destroy his personal property, and to threaten and intimidate him, to dissuade

him from appearing in court and contesting their 1998 criminality.  (Id., ¶ 14.)  In May and June

2010, the City of Attleboro assigned an officer to phone in threats and false accusations against

D'Amario at FCI Victorville, to dissuade him from returning home to Rhode lsland.  (Id., ¶ 15.)

In 2012, D'Amario discovered that Sellers was granted an undeserved and unwarranted MGL c.

209 no-contact order from Attleboro District Court after the assistant district attorney's father, a

local judge, had secretly engaged in ex parte contact with the trial judge and "fixed" the

proceeding in favor of Sellers so that his son could abuse the judicial process with phony

"contact" violation complaints that were requested by Motorola executives.  (Id., ¶ 16.)

***Section 8 Housing Claim***

On May 17, 2010, Defendant Manhattan accepted D'Amario's section 8 housing

application and placed him on the waiting list for an affordable apartment at Esmond Village.

(Id., ¶ 17.)  D'Amario had resided in section 8 housing in Smithfield from 1997-99 and fully

complied with all rules, and in August 2012 was informed by Smithfield Housing Authority that he is still eligible because he has no convictions involving drugs or domestic violence.  (Id., ¶ 18.)  On Aug. 27, 2012, Manhattan notified D'Amario that he was being denied admission to Esmond Village due to "criminal history."  His administrative appeals were denied.  Had he remained on the list since May 17, 2010, he would be offered an apartment in the near future. (Id., ¶ 19.)

In making the August  27, 2012, decision, Manhattan yielded to influence exerted by the Rhode lsland Attorney General and his predecessor, who is the brother of the president of Manhattan.  The Attorney General and other state officials are trying to perpetuate the cover-up of the Attleboro police crimes by obstructing D'Amario's efforts to acquire housing in Rhode lsland.  From 2002-10, unknown state officials contacted other section 8 landlords in Rhode lsland, pretended to be D'Amario, and asked to have his name expunged from waiting lists so that he could not reside in Rhode lsland after his false imprisonment.  (Id., ¶ 20.)

D'Amario does not have a "criminal history" as asserted by Manhattan.  His ex-lawyers are criminals, and four of them have been disbarred for fraud and dishonesty.  His original accusers, the Rhode Island Attorney General's Strike Force, were criminals indicted under RICO.  DNA testing will show the Attleboro police and their Rhode lsland associates to be criminals, and Sellers to be a habitual liar.  (Id., ¶ 21.)  Moreover, D'Amario has never had a trial due to structural defects in the judicial system.  His rights were thrown away by scared, incompetent and unqualified lawyers or by other lawyers who took bribes.  Some of his court proceedings were "fixed" by a judge and his son, an assistant district attorney, with Motorola, and his federal case files in the District of New Jersey were altered by USMS and clerks.  (Id., ¶ 22.)

In paragraphs twenty-three, twenty-four, and twenty-seven D'Amario digresses into a lengthy discussion about appearing before the Rhode Island Judicial Nominating Commission in 1995 and speaking publicly on behalf of the "right candidate" for a Rhode Island Supreme Court vacancy.  Apparently this appearance caused a group of Rhode Island judges to launch a huge conspiracy which resulted in the criminal charges and the "climate of hostility" toward him.  As part of this conspiracy, the state judges exerted influence upon Section 8 landlords to not rent to D'Amario, without reason or justification, and to banish him from Rhode Island, and they intimidated the Rhode Island Bar into not defending or representing D'Amario.  As far back as 1993, when the Judicial Nominating Commission was formed, a group of state-court officials implemented a plan of harassment, retaliation and police abuses including false arrests against private citizens who tried to advocate judgeships for outsider, non-political candidates. D'Amario is part of that class of speakers which is protected by 42 USC 1985(3), and Manhattan is denying him housing by virtue of that class-based animus handed down from the judges.

When admitted to Manhattan's waiting list on May 17, 2010, D'Amario fully qualified for admission under state law and community standards.  Manhattan failed to provide him notice that his name was being deleted from the list and an opportunity to be heard in objection. (Id., ¶ 25.)  Manhattan is carrying out a personal vendetta against D'Amario on behalf of Rhode Island state officials.  (Id., ¶ 26.)  D'Amario will suffer irreparable injury unless the court orders him restored to the Esmond Village waiting list retroactive to May 17, 2010, and orders the City of Attleboro to subject the anonymous letters and envelopes to impartial and professional DNA/fingerprint analyses, and to release their public records.  (Id., ¶ 28.)

**Discussion**

***Manhattan Housing Specialists, Inc.'s. Motion to Dismiss***

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  The court accepts as true the factual allegations of the complaint, draws all *reasonable* inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).

Normally the court does not consider any materials beyond the four corners of the complaint.  An exception is recognized, however, which permits a court to consider documents that are not reasonably subject to challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into or sufficiently referred to in the complaint.  Greenier v. Pace Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Plaintiff's pro se complaint must be construed liberally and held to a less stringent standard than one drafted by an attorney.  Haines v. Kerner, 404 U.S. 519, 520, (1972).

Manhattan participates in a section 8 housing program at Esmond Village.  Under this program low income tenants pay rent for privately owned housing and the federal government provides housing assistance payments for the low income tenants.  According to Manhattan, Rhode Island Housing, a public housing agency, administers the program in which Manhattan participates.  (Mem. in Support of Mot. at 4, ECF No. 22-1.)  The gist of D'Amario's amended complaint, as it pertains to Manhattan, is that he was denied admission to Esmond Village because of his criminal history.  D'Amario's legal theory appears to hinge on the claimed underlying constitutional violations by the City of Attleboro which led to his wrongful criminal convictions.  Manhattan does not dispute the central allegation against it, that it denied D'Amario admission to the housing project because of his criminal history.  (Id. at 4.)  It is Manhattan's position that denying housing based upon criminal history is not contrary to any federal or state law and that therefore the complaint does not state a claim.  Manhattan asks the court to simply review readily available public records to determine that D'Amario has a criminal record and dismiss the complaint for failure to state a claim.

There is no dispute that D'Amario has a criminal history, notwithstanding D'Amario's conclusory assertion in paragraph twenty-one of the proposed amended complaint stating that he does not have a criminal history as asserted by Manhattan.   His complaint itself is about an allegedly wrongful underlying conviction from 1997.  A review of various public documents and decisions from this and other courts reveals that the 1997 conviction involving the alleged stalking incident is but the tip of the iceberg in terms of D'Amario's criminal convictions.  A reported case from the United States District Court (District of New Jersey), sets out plaintiff's extensive criminal history in the Federal Court System:

In 1999, D'Amario was convicted and sentenced in the District of Rhode Island for being a felon in possession of a firearm. See United States v. D'Amario, Crim. A. No. 99–30 (D.N .H.)(footnote omitted).  While serving his sentence at a federal prison in New Jersey, D'Amario was indicted for threatening Judge Joseph A. DiClerico, Jr., who had presided over his trial. See United States v. D'Amario, 330 F. App'x 409, 411 (3d Cir. 2009). After a trial on that charge, presided over by Judge Joseph E. Irenas of the District of New Jersey, D'Amario was convicted of threatening a federal judge, pursuant to 18 U.S.C. § 115(a)(1)(B). Id.; see United States v. D'Amario, Crim. A. No. 01–346 (D.N.J.). While serving a prison sentence for that conviction, D'Amario sent a threatening letter to Judge Irenas. He was again convicted under 18 U.S.C. § 115(a)(1)(B), after a trial presided over by Judge Paul S. Diamond. United States v. D'Amario, Crim. A. No. 06–112 (D.N.J.). D'Amario served 84 months of imprisonment on this second § 115(a)(1)(B) conviction and is currently serving a three-year term of supervised release. See In re D'Amario, No. 12–4528, 2013 WL 142044, at *1 (3d Cir. Jan.14, 2013) (per curiam).

D'Amario v. Weiner, No. 12-cv-06098, 2013 WL 622110, at *1, 2013 U.S. Dist. Lexis 22002, at *3-4 (D.N.J. Feb. 19, 2013).

Similarly the Rhode Island state courts have provided a partial history of D'Amario's state court convictions in the context of a 2005 decision on a state habeas petition filed by D'Amario and found to be without merit:

On October 8, 1996, Mr. D'Amario pleaded nolo contendre to one felony count of obstruction of the judicial system, in violation of § 11-32-3 (No. P2/96-0548A), and one misdemeanor count of disorderly conduct, in violation of § 11-45-1 (No. P2/96-3450A). The Court, Goldberg, J., sentenced him to eighteen months imprisonment, suspended, and three years probation for the felony, and one year of probation for the misdemeanor.

Subsequently, Mr. D'Amario was charged in the United States District Court, District of Rhode Island, with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On February 22, 1999, the State of Rhode Island, based upon facts underlying the federal offense, presented Mr. D'Amario as a violator of his suspended sentence, pursuant to Super. R. Crim. P. 32(f). On March 10, 2000, the United States District Court, DiClerico, J., sentenced Mr. D'Amario to 18 months imprisonment (No. CR 99-24ML). On March 13, 2000, the Court, Clifton, J., without objection and pursuant to Rhode Island Evidence Rule 201(b), took "judicial notice" of Mr. D'Amario's federal conviction, and found Mr. D'Amario to be in violation of his suspended sentence previously imposed in P2/96-0548A and P2/96-3450A. Accordingly, the Court removed part of the

10

suspended sentence, ordering Mr. D'Amario to serve an agreed upon term of 386 days, retroactive to February 22, 1999.

D'Amario v. State of Rhode Island, No. PM 2001-1305, 2005 WL 372214, at *1, 2005 R.I. Super. Lexis 8, at *1-2 (R.I. Super. Ct. Feb. 9, 2005).  There is no question but that D'Amario has an extensive criminal history as demonstrated by public records readily available and subject to judicial notice.

D'Amario's legal theory against Manhattan, as set forth in his proposed amended complaint, appears to be that (1) he has a state law claim against Manhattan for wrongfully removing him from the waiting list in violation of state law and community standards[4] and (2) Manhattan became a "state actor" by conspiring with Rhode Island state officials to carry out a personal vendetta against him, presumably in violation of the United States Constitution, and the action against Manhattan thus arises under 42 U.S.C. § 1983.  Under Iqbal's pleading standard, the conspiracy claim is a complete nonstarter.  There must be factual allegations linking Manhattan to a state conspiracy to deprive D'Amario of some cognizable constitutional right. Manhattan cannot become a state actor by being named as part of the "conspiracy" in a conclusory paragraph of a proposed amended complaint.  See Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011) ("So suppose some of the plaintiff's factual allegations are unrealistic or nonsensical and others not, some contradict others, and some are 'speculative' in the sense of implausible and ungrounded. The district court has to consider all these features of a complaint en route to deciding whether the complaint has enough substance to warrant putting the defendant to the expense of discovery …" ) (citations omitted).  There are no non-conclusory allegations about Manhattan's involvement in an alleged conspiracy dating back to 1999 that

---

[4]      D'Amario does not assert a claim of discrimination based on race, gender, or other impermissible classification under federal housing laws.  Indeed, the most applicable federal regulation, 24 C.F.R. § 982.307, indicates the owner of section 8 housing has the responsibility for screening tenants based upon a variety of factors, including criminal activity that is threatening to the safety of others.

would warrant this complaint going forward.  The proposed amended complaint fails to state a

claim under the plausibility standard set forth in Ashcroft v. Iqbal and should be dismissed.   The

only plausible factual claim against Manhattan is that Manhattan removed D'Amario from the

waiting list and denied him housing at Esmond Village, a fact not disputed by the defendant.

Perhaps sensing that the federal claim against Manhattan has no legs, D'Amario urges the

court to retain supplemental jurisdiction of his state law claim pursuant to 28 U.S.C. § 1367(a).

There are two problems with this request.  First, D'Amario does not identify a state statute or

common law cause of action in Rhode Island that would pertain to a landlord refusing to rent an

apartment to a tenant because of his criminal history.  In the absence of a viable state law claim

there is nothing over which to exercise "supplemental" jurisdiction.

The second problem is that even if there is some as yet unidentified state law claim

lurking in the proposed amended complaint, the simple truth is, as explained below in the

recommendation pertaining to the City of Attleboro, there is no federal claim to supplement in

this case.  In order to exercise supplemental jurisdiction the court would have to find that

D'Amario's federal claim has substance sufficient to give rise to subject matter jurisdiction, the

federal and state claims derive from a common nucleus of operative facts, and the claims would

ordinarily be tried in one judicial proceeding.  United Mine Workers of America v. Gibbs, 383

U.S. 715, 725 (1966).  Since D'Amario's claim against Manhattan did not arise until August

2012, and his claim against the City of Attleboro apparently arose pre-1999, it is hard to

understand how the federal and state claims derive from a common nucleus of operative facts

and would ordinarily be tried in one judicial proceeding.   Manhattan has no discernible

connection to letters mailed in 1998-1999 and the associated fingerprint and DNA evidence and,

thus, even if there were some federal claim against the municipality, which there is not, it would

be a stretch to exercise supplemental jurisdiction over the Manhattan state law claim.

### Dismissal of Claim Against the City of Attleboro

Sections 1915A(a) and (b) of title 28 provide:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any
> event, as soon as practicable after docketing, a complaint in a civil action in which
> a prisoner seeks redress from a governmental entity or officer or employee of a
> governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims
> or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be
> granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a),(b).  Similarly, the federal in forma pauperis statute states that "the court

shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is

frivolous or malicious; (ii) fails to state a claim on which relief can be granted . . ." Id. §

1915(e)(2)(B)(i-ii).  Since D'Amario was not a prisoner at the time he filed the complaint, this

complaint was never screened pursuant to section 1915A.  Nevertheless, section 1915 provides

authority for a sua sponte dismissal prior to service[5] whenever any litigant proceeds in forma

pauperis if the complaint is frivolous or fails to state a claim.  D'Amario's complaint against the

City of Attleboro falls into just that category.

Under 42 U.S.C. § 1983, municipalities cannot be held liable for constitutional violations

perpetrated by municipal employees simply because they are the employers.  Welch v. Ciampa,

542 F.3d 927, 941 (1st Cir. 2008) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691

(1978)).  Section 1983 claims against a municipal defendant will only be successful under

---

[5]     There was some initial jockeying over the efficacy of the service that was attempted in regard to Police
Chief Heagney.  As I indicated earlier, D'Amario envisions his suit for equitable relief as being brought against the
City of Attleboro as the true named defendant.  I thus base my recommendation upon D'Amario's theory that the
city has municipal liability which would give rise to the equitable relief of DNA and fingerprint testing requested by
D'Amario.

<u>Monell</u> if the entity was responsible for a policy, custom, or practice that caused the violation in question.  <u>Id.</u>  Assuming that an underlying deprivation is established, proof of a municipal custom or policy claim involves two additional elements:

> First, the custom or practice must be attributable to the municipality, i.e., it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989).  Second, the custom must have been the cause of and "the moving force" behind the deprivation of constitutional rights.  <u>Id.</u> at 1157.

<u>Miller v. Kennebec Cnty.</u>, 219 F.3d 8, 12 (1st Cir. 2000).  The first of these additional elements is generally referred to as a "deliberate indifference" element, <u>Young v. City of Providence</u>, 404 F.3d 4, 26 (1st Cir. 2005), but it is also referred to as a "culpability" or "fault" element, <u>Haley v. City of Boston</u>, 657 F.3d 39, 52 (1st Cir. 2011).  The second additional element is causation and it requires evidence of a "direct causal link between the policy and the violation." <u>Burrell v. Hampshire Cnty.</u>, 307 F.3d 1, 10 (1st Cir. 2002) (internal quotation marks omitted).  Together, these additional elements require the plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of the Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 402 (1997).

D'Amario alleges at the beginning of his amended complaint that in 1998 the City of Attleboro promulgated an official policy of harassing D'Amario with false arrests and false imprisonments to drive him out of *Rhode Island*[6] and leave him homeless.  (Proposed Amended Complaint, ¶ 4.)  The whole premise of D'Amario's current lawsuit is that the named police officers committed various unconstitutional acts beginning in 1997 and continuing through at least 2010 when an Attleboro police officer allegedly made threatening phone calls to D'Amario

---

[6]    To the best of my knowledge, and taking judicial notice of commonly available maps and documents, Attleboro is a city in Bristol County, Massachusetts.  Indeed, D'Amario identifies Attleboro as a city in Massachusetts.  (Proposed Amended Complaint ¶ 4.)  The complaint does not attempt to provide a factual basis from which a plausible inference could be drawn that would explain why a Massachusetts city would be interested in driving someone out of a neighboring state as part of its official policies.

(id., ¶ 15) pursuant to this official policy.  While D'Amario does not seek monetary damages he does want injunctive relief against the City, requesting that the court order it to release all relevant records and evidence (presumably to D'Amario) and that the city be required to submit the 1997-98 era letters to an impartial lab for DNA and fingerprint testing, presumably at the City's expense.

This proposed amended complaint should be dismissed prior to service for two reasons. First, under Iqbal pleading standards the conclusory statement regarding an official municipal policy of harassment is insufficient.  Assuming the preposterous allegations in this proposed amended complaint are true, half of them have nothing to do with the City of Attleboro and its agents or officers.  Furthermore, the allegations concerning the sporadic actions of individual Attleboro police officers over a span of almost fifteen years do not in and of themselves create an official policy.  D'Amario has not sued the individual officers and thus apparently thinks he can simply skip the requirement of municipal liability under section 1983 that requires him to first prove a constitutional violation by one or more officers.  Of course, if he tried to establish the constitutional liability of these officers for his "wrongful" conviction, he would run into Heck v. Humphrey, 512 U.S. 477 (1994), which bars civil lawsuits for allegedly unconstitutional conduct if the allegations, if proved, would render his underlying conviction invalid.

The second reason for dismissal of the equitable relief claim against the City of Attleboro is that the claim itself is frivolous.  A district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation.  Elbery v. Louison, 201 F.3d 427 (Table), Nos. 99-1039, 99-1319, 1999 WL 1295871 at *2, 1999 U.S. App. Lexis 32883, at *4 (1st Cir. Dec. 17, 1999) (per curiam) (citing Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir.1993)).  Vexatious conduct occurs where a party's actions are "frivolous,

unreasonable, or without foundation." Local 285 Serv. Employees Int'l v. Nonotuck Res.
Assoc., Inc., 64 F.3d 735, 737 (1st Cir. 1995); accord Alexander v. United States, 121 F.3d 312,
315-16 (7th Cir. 1997) (sanction appropriate when "objectively unreasonable litigation-
multiplying conduct continues despite a warning to desist"). Vexatious conduct may be found
even in the absence of subjective bad intent, Local 285 Serv. Employees Int'l, 64 F.3d at 737.
D'Amario is not unfamiliar with this standard. State v. D'Amario, 725 A.2d 276, 281 (R.I.
1999) (per curiam) ("courts have limited resources and . . . relentless, frivolous filings constitute
unreasonable demands on those resources.").

Without reciting yet again the relentless history of D'Amario's litigation, suffice it to say
that the federal courts of Rhode Island, New Hampshire, Maine, and New Jersey, together with
the Rhode Island state courts have spent countless hours litigating and relitigating these claims in
the context of civil lawsuits, post-conviction proceedings, and criminal matters. A simple
PACER inquiry reveals over 270 separate PACER entries for Arthur D'Amario, III involving
litigation in federal courts in the Districts of Rhode Island, New Hampshire, Maine, New Jersey,
Massachusetts, Arizona, California, Colorado, Connecticut, New York, Pennsylvania,
Minnesota, Missouri, North Carolina, and Texas. According to the frivolous allegations of this
case, apparently most of these matters could be traced ultimately to D'Amario's 1995 appearance
before a Rhode Island judicial nominating commission that resulted in a personal vendetta
against him, leading to wrongful conviction upon wrongful conviction, all of which apparently
spawned civil litigation such as this case. This endless litigation must stop. There is no
allegation against the City of Attleboro (or Police Chief Heagney, in his official capacity) that
warrants further consideration by this Court at this time.

***The Motion to Amend***

As my recommendation makes clear, I have considered D'Amario's litigation in the light of his proposed amended complaint.  Pursuant to Rule 15 of the Federal Rules of Civil Procedure, prior to trial a party may amend his pleading once, as a matter of course at the outset of litigation, but may only amend the pleading further with the opposing party's consent or with leave of court.  Fed. R. Civ. P. 15(a).  When leave of court is called for, the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  D'Amario has timely moved for leave of court to amend his complaint and thus I apply the liberal standard allowing amendment of complaints.  Forman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'").  However, there are certain instances when amendment need not be allowed, such as a situation where the amendment would be futile. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters").  Courts tend to review pro se complaints according to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).

I have applied this legal standard to D'Amario's proposed amended complaint and reviewed it carefully in light of my recommendations regarding dismissal of the lawsuit. Concluding that the proposed amended complaint would be futile, I deny leave to amend.

**Conclusion**

Based upon the foregoing, I deny the motion to amend and I recommend that the Court grant Manhattan's motion to dismiss and that the Court sua sponte dismiss any remaining named defendants in the complaint.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 16, 2013